Mary Ann **ROBERTSON**, Plaintiff,

v.

**CITY OF BECKLEY**, West Virginia, et al., Defendants.

**Civil Action No. 5:96–0022.**

United States District Court, S.D. West Virginia, Beckley Division.

May 7, 1997.

Donald L. Pitts, Shady Springs, WV, for plaintiff.

Jeffrey K. Phillips, W. Randolph Fife, Steptoe & Johnson, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion for summary judgment. The Court **GRANTS** the motion on Plaintiff's federal claims and **RE-MANDS** the remaining state law based claims.

### I.

Plaintiff Mary Ann Robertson resides at Apartment 20, 123 Hager Street, a fifty unit apartment complex, in Beckley, West Virginia. Apartment 20 is a two-story wood frame structure, the second to last unit on the left side of Hager Street.

Robertson's apartment shares a common wall with and is next door to Apartment 21, 123 Hager Street. Robertson states Apartment 21 is a "drug apartment," which presumably means illegal drug activity occurs within. Robertson Dep. at 125. In fact, Robertson testified she saw "about ten or twelve" persons she believed to be drug dealers and purchasers in and around Apartment 21 the day the events at issue here took place. *Id.* at 45–47. Apart from a four inch apartment number on the front door of both units, the two apartments are of the same style and color, and residents are not permitted to change the exterior appearance of the units. According to Robertson's deposition testimony, the apartments are "exactly the same." *Id.* at 18.

On May 5, 1996, acting on a tip from a confidential informant that crack cocaine was being used and distributed from the second to last apartment on the left side of Hager Street (Robertson's apartment), Raleigh County Sheriff's Deputy Randy Burgess obtained from a state magistrate a warrant to search Robertson's apartment. Deputy Burgess, accompanied by Beckley Police Sergeant Bruce McNeill, Officers Stanley Sweeney, Marvin Robinson, Michael Akers, Ron Booker and Vernon Pack, executed the warrant at approximately 11:00 p.m. that evening and searched the apartment for approximately one hour. The officers found no evidence of illegal drugs at the apartment.

Robertson instituted this civil action in the Circuit Court of Raleigh County against the City of Beckley, Corporal Sweeney, Sergeant McNeill, and Deputy Burgess in their individual capacities.[1] In her First Cause of Action, Robertson alleges: (1) the search "violat[ed] Plaintiff's Fourth Amendment guarantee, under the Constitution of the United States, against searches and seizures without probable cause....", Amended Complaint ¶ 13; (2) the search "violat[ed] ... Plaintiff's guarantees under the Constitution of the State of West Virginia, specifically, Article 3, Section 6, and Plaintiff's guarantees under the common law," id.; (3) the actions of the individual Defendants constituted "excessive use of force and false imprisonment ... in violation of the Fourth and Fourteenth Amendments," id. ¶ 18; and (4) the City of Beckley had a "practice, policy and custom of failing to properly train, supervise and discipline police officers, including the individual defendants, regarding constitutional restraints on police power to enter and search residences and in the use of force in effectuating said searches," id. ¶ 20.

Her Second Cause of Action alleges various tort claims, including "assault, false arrest, false imprisonment, intentional infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence, and negligent hiring, retention and supervision...." Id. ¶ 22.

Pursuant to 28 U.S.C. § 1443, Defendants removed to the Beckley Division based on Robertson's federal claims. The Honorable Elizabeth V. Hallanan, District Judge, denied Robertson's motion to remand. On December 19, 1996, this action was reassigned to this Judge.

## II.

### A. Constitutional claims against the individual Defendants

As stated *supra*, Robertson alleges the individual officers violated her federal right to freedom from searches without probable cause. Although the search of Robertson's home was authorized by a warrant, Robertson asserts "the search warrant for [her] residence was so lacking in indicia of probable cause as to render the search of [her] residence unconstitutional." Pl.'s Mot. Opp'n to Defs.' Mot. Summ. J. at 1.

In their motion, the individual Defendants assert the defense of qualified immunity. Qualified immunity immunizes officers from 42 U.S.C. § 1983 liability arising from their official discretionary acts that do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir.1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986); *Buonocore v. Harris*, 65 F.3d 347, 352 (4th Cir.1995)).

■ Our Court of Appeals has formulated a three prong test to determine whether an officer's conduct is immunized:

(1) identify the right allegedly violated, (2) decide whether that right was clearly established at the time of the alleged violation, and, if so, (3) determine whether a reasonable person in the officer's position would have known that his or her actions violated that right.

*Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992)(cited in *Reddy*, 101 F.3d at 355).

■ Regarding Robertson's illegal search claim, the Fourth Amendment right

---

1. Robertson did not name Officers Robinson, Booker, Akers and Pack as defendants.

to freedom from searches lacking probable cause is clearly established. On the other hand, the Fourth Amendment is not violated "by the mistaken execution of a valid search warrant on the wrong premises." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Employing the three step analysis, the remaining question is whether the officers acting pursuant to the warrant could have believed reasonably there was probable cause to seek the warrant. *See Reddy,* 101 F.3d at 356; *see also Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523; *Torchinsky v. Siwinski,* 942 F.2d 257, 260 (4th Cir.1991). The individual Defendants should retain the shield of qualified immunity unless " 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.' In other words, an officer is not denied qualified immunity for making a mistake, so long as that mistake is reasonable under the circumstances." *Reddy,* 101 F.3d at 356 (quoting *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098).[2]

▮ Defendants exhaustively proffered the indicia of probable cause that supported Deputy Burgess' warrant application as follows:

a. A confidential informant ["CI"] told Detective Marvin Robinson that crack cocaine was being used and sold from [Robertson's] apartment.[ ]

b. The [CI] had provided Detective Robinson and other law enforcement officers with credible and helpful information in past drug investigations.[ ]

c. The [CI's] claim regarding the narcotics at [Robertson's] apartment sounded truthful.[ ]

d. Corporal Stan Sweeney and Deputy Randy Burgess interviewed the [CI].[ ]

e. The [CI] stated that she had just observed large amounts of crack cocaine in [Robertson's] apartment and witnessed crack cocaine being smoked at [Robertson's apartment].[ ]

f. The [CI] specifically described the location of [Robertson's] apartment.[ ]

g. The [CI] said that two men, Bull Parker and Maurice Pitman, who were known as drug dealers to the officers, were selling drugs from [Robertson's] apartment.[ ]

h. The [CI] said that [Robertson] was still in her apartment.[ ]

i. The [CI] previously provided reliable information regarding illegal drug transactions to Corporal Sweeney and other police officers.[ ]

j. The previous information provided by the [CI] had resulted in criminal convictions.[ ]

k. The information provided by the [CI] to Corporal Sweeney and Deputy Burgess sounded truthful and sincere.[ ]

l. Surveillance of Apartment 20 was conducted by Deputy Burgess and Corporal Michael Akers.[ ]

m. During the forty-five minute surveillance, the officers, while using vision enhancing devices, observed a number of black males wearing large jackets with hoods enter the back door to

**2.** The foregoing makes clear that the Court need not resolve definitively whether probable cause existed to justify the issuance of the search warrant of the Robertson home to dispose of the Fourth Amendment claim. Even if probable cause did not exist, the officers would still be entitled to qualified immunity and the Robertson suit would be barred so long as their belief, albeit mistaken, in probable cause was reasonably held. *See Torchinsky,* 942 F.2d at 260 (citing *Lowrance v. Pflueger,* 878 F.2d 1014, 1017 (7th Cir.1989)); *see also Reddy,* 101 F.3d at 356.

The Court of Appeals has explained why this is so:

Because qualified immunity is designed to shield officials not only from ultimate liability but also from the hardships of litigation itself, "the immunity shield is necessarily more protective than is the defense on the merits." [*Collinson v.*] *Gott,* 895 F.2d [994,] 998 [4th Cir.1990]. This broader protection is reflected in [the] test of "objective reasonableness" for entitlement to qualified immunity .... [under which] a plaintiff may prove that an official has violated his rights, but an official is nonetheless entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. [*Id.*] at 998.

*Torchinsky,* 942 F.2d at 260.

[Robertson's] apartment, stay approximately four or five minutes, then leave.[ ]

n. The conduct of the individuals in and around [Robertson's] apartment was consistent with drug transactions.[ ]

o. When Deputy Burgess drove to the front of Apartment 20, the individuals in front of Apartment 20 would immediately leave the area and enter Apartment 20 in a suspicious manner.[ ]

p. All of the law enforcement officers involved in this investigation were well schooled, well trained, and well experienced.[ ]

Defs.' Reply at 3–5. Armed with these facts,[3] Deputy Burgess sought and obtained a search warrant for Robertson's apartment from a Raleigh County magistrate.

Ms. Robertson proffers facts that, according to her, indicate no probable cause existed. As noted *supra* note 2, whether probable cause in reality existed is irrelevant to the Court's inquiry. Instead, the Court inquires whether the officers seeking the warrant could have believed reasonably probable cause was present. Rephrased in this light, Robertson argues the officers could not have believed reasonably probable cause was present because, as a general matter, "the allegations contained in the affidavit were 'bare bones and conclusory.'" Pl.'s Resp. at 8. In support of this contention, Robertson notes (1) Robertson herself is not named in either the search warrant or Deputy Burgess' affidavit; (2) Bull Parker, the person stated in the affidavit as a known drug dealer who was dealing drugs from Robertson's apartment, did not reside in the apartment; (3) neither the warrant application nor the supporting affidavit stated Parker was an associate of Robertson; (4) neither the warrant application nor the supporting affidavit set forth facts supporting Deputy Burgess' statement that the confidential informant was reliable;

and (5) neither document set forth facts indicating how the confidential informant had come to see the crack cocaine at Robertson's apartment.

None of these purported flaws is fatal, and none gives rise to a valid § 1983 claim requiring the individual Defendants to respond in damages. Suffice it to say that the totality of the circumstances as they appeared to Deputy Burgess led to his reasonable belief that probable cause existed to search the Robertson apartment. Deputy Burgess' belief in the credibility of the CI's tip was reasonable based on (1) the officers' personal interview with the CI, (2) their prior dealings with the CI, (3) the CI's detailed and accurate description of the Robertson home and environs,[4] and (4) the officers' verification of the tip by surveillance.

Robertson appears most offended by the portion of Deputy Burgess' affidavit describing the activities of "many black males" congregated outside Robertson's apartment. The portion of the affidavit at issue reads:

[U]nidentified black males would go to the back door of Apartment 20 of the Hager Street Apartments and stand in a waiting manner. When the door of the apartment opened, the black males would enter and exit the apartment in anywhere from one to five minutes, and leave in a manner as if they were paranoid or in an extreme hurry. These acts occur[red] approximately eight times in one hour. The affiant [Burgess] drove to the front of apartment 20. As the affiant approached the parking area in front of apartment 20, all subjects in front of apartment 20 would immediately leave the area and enter apartment 20, in a suspicious manner, shutting the door.

*See* Search Warrant, Defs.' Mot. Summ. J., Ex. B. at 1. Addressing this, Robertson states, "[t]he mere fact that 'many black males' would be observed entering an apart-

---

3. While better practice would have been to include all these exhaustive indicia in the affidavit submitted to the magistrate, their absence does not foreclose a finding that the officers could have believed reasonably, but mistakenly, they had probable cause to search Ms. Robertson's residence.

4. The application for the warrant accurately described the Robertson house as "[a] two story wood frame green in color apartment complex, located at 123 Hager Street, Apartment number 20, Beckley, Raleigh County, West Virginia." See Search Warrant, Defs.' Mot. Summ. J., Ex. B.

ment complex where many black males reside does not automatically make them guilty of participating in drug trafficking." Pl.'s Resp. at 5. Of course this is true, but it is also beside the point.

The Constitution does not require an officer seeking a search warrant to present to a magistrate information sufficient to support a finding that the target of the warrant is guilty beyond a reasonable doubt of the suspected crime, *United States v. Harris*, 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971); a finding of sufficient probability, *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1110–11, 28 L.Ed.2d 484 (1971), supported by hearsay information received from informants and corroborated by the affiant's own perhaps hastily garnered knowledge, *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978), will suffice.

Perhaps most importantly, there is nothing in the record to suggest that either the magistrate or the officers were in any way motivated to obtain the warrant by the fact that the persons the officers saw outside the Robertson apartment were African–American. There is no evidence that Deputy Burgess noted the race of these persons to provide an additional ground for the issuance of the warrant. Absent such evidence, one could draw the reasonable inference that Deputy Burgess used the term "black males" in his affidavit merely to describe in detail what he saw outside Apartment 20. Myriad facts contained in the affidavit supported a finding of probable cause, not the least of which was the confidential informant's tip and Deputy Burgess' belief, based on his experiences with the CI, that the tip was credible.

Robertson also is apparently concerned that the officers may have been mistaken in their surveillance of her home, and that, as she states, no "black males" with hoods and large jackets ever visited her apartment that day. Even if this were true and uncontroverted, and the officers thus were mistaken, their mistake was objectively reasonable given the similarity between Robertson's apartment and the neighboring Apartment 21, which Robertson identifies as a "drug apartment."

The conclusion that Deputy Burgess acted with objective reasonableness is supported further by the fact that the officer sought and obtained from a magistrate a search warrant for the Robertson home. *See Torchinsky*, 942 F.2d at 261–62; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 988–89, 104 S.Ct. 3424, 3427–28, 82 L.Ed.2d 737 (1984). As implied in *Torchinsky*, the decision of a magistrate that a police officer "satisfied the more stringent probable cause standard is plainly relevant to a showing that he met the lower standard of objective reasonableness required for qualified immunity." 942 F.2d at 261–62 (according significance to a district judge's finding of probable cause). Moreover, when a police officer protects a homeowner's rights by obtaining a warrant from a neutral, detached magistrate, as officers are encouraged to do, the officer is entitled to a certain amount of protection from lawsuits brought under 42 U.S.C. § 1983. *Torchinsky*, 942 F.2d at 262. Without such protection, "the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions." *Id.* (citing *Ortiz v. Van Auken*, 887 F.2d 1366, 1369 (9th Cir.1989)).

Turning to Robertson's constitutional claims of excessive use of force and false imprisonment, Robertson has proffered no evidence to support these claims. In fact, the words "excessive force" and "false imprisonment" do not even appear in her Response Memorandum. Either Robertson has abandoned her excessive force claim, or she has uncovered no evidence to support such a claim. Indeed, Robertson herself testified that during the search the officers: (1) had no physical contact with any of the occupants of the apartment; (2) did not break or damage of the personal property in the apartment; (3) permitted Robertson to phone her brother, a Beckley police officer; (4) allowed Robertson and another occupant of her apartment to observe the search; and (5) were not rude or obnoxious. Sergeant McNeill gave Robertson his card after the officers concluded the search, and requested

she call him if her landlord attempted to evict her because of the commotion caused by the search. One of the officers comforted Robertson's young son during the search. Robertson's excessive force and false imprisonment claims are wholly unsupportable.

### B. *Constitutional claims against the City of Beckley*

Robertson alleges the City of Beckley had "a practice, policy and custom of failing to properly train, supervise and discipline police officers, including the individual defendants, regarding constitutional restraints on police power to enter and search residences and in the use of force in effectuating said residences." Defendants moved for summary judgment on this claim, stating Robertson has produced no evidence in support thereof. The Court agrees. In her Response Memorandum, Robertson does not so much as mention her municipal liability claim. The Court can only infer that she has abandoned this cause of action.[5]

### C. *State law claims*

All claims over which the Court has original jurisdiction have been dismissed. After consideration of the factors discussed in *Shanaghan v. Cahill,* 58 F.3d 106 (4th Cir. 1995), the Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the putative State claims. Accordingly, the Court **REMANDS** all State claims to the Circuit Court of Raleigh County, West Virginia.

### III.

In granting the Defendants' summary judgment motion, the Court does not intend to minimize the emotional impact of this episode on Ms. Robertson and her family. Undoubtedly the officers' actions disrupted their lives. While the search was certainly regrettable, not every mistaken action by a police officer is actionable under § 1983. Were

such mistakes actionable, "difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." *Torchinsky,* 942 F.2d at 261. Here, the officers interviewed a confidential informant, with whom they had worked and who had provided credible information in the past, corroborated the information the informant through surveillance, and then obtained a search warrant from a magistrate. The Court holds these actions satisfy the requirements of objective reasonableness on which qualified immunity rests.

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's federal claims and **REMANDS** all state claims to the Circuit Court of Raleigh County. The Clerk is **DIRECTED** to remove this action from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and a certified copy to the Clerk of the Circuit Court of Raleigh County, West Virginia.

---

**5.** Even had she proffered evidence to support her custom and policy claim, the recent decision of the United States Supreme Court's in *Board of County Comm'rs v. Brown,* —— U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), emphasizes the difficult proof burden she would have to meet in order to establish municipal liability:

[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.

*Id.* at ——, 117 S.Ct. at 1388.