Harry L. TORIAN, Plaintiff,

v.

CITY OF BECKLEY and Stanley L. Sweeney, Defendants.

Civil Action No. 5:95–1114.

United States District Court,
S.D. West Virginia,
Beckley Division.

May 7, 1997.

Donald L. Pitts, Shady Springs, WV, for plaintiff.

Jeffrey K. Phillips, W. Randolph Fife, Steptoe & Johnson, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion for summary judgment. The Court **GRANTS** the motion on Plaintiff's federal claims and **REMANDS** the remaining state law based claims.

Plaintiff originally filed this action on November 22, 1995 in the Circuit Court of Raleigh County, West Virginia alleging that on October 3, 1995 Defendant Sweeney and other police officers forced their way into a residence at 102 Ellis Street in Beckley without a valid search warrant and searched Plaintiff in violation of state and federal law. The Complaint also alleges claims based on use of excessive force and false imprisonment. Plaintiff asserts these causes of action pursuant to 42 U.S.C. § 1983 based on violations of the Fourth and Fourteenth Amendments to the United States Constitution. Defendant Sweeney asserts he is entitled to qualified immunity from liability in regard to these claims. The City of Beckley argues it may not be subjected to liability based on the federal causes of action because there is no evidence of a custom or policy on its part that led to a deprivation of Plaintiff's civil rights.

Plaintiff also asserts claims resulting from alleged violations of the West Virginia Constitution as well as state causes of action for assault and battery, strong armed robbery, false arrest, false imprisonment, intentional infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence, and negligent hiring, retention and supervision. The case was removed to federal court on December 14, 1995 based on Plaintiff's federal claims pursuant to 28 U.S.C. § 1443.

## BACKGROUND

Throughout the night of October 2, 1995 and into the early morning of October 3, Plaintiff Torian, Walter Sherba, and others smoked crack cocaine at the house of Torian's girlfriend, Gloria Fowlkes, which was located at 102 Ellis Street in Beckley. After leaving the house, Mr. Sherba contacted Sergeant Bruce McNeill of the multi-agency area anti-drug task force, R.U.D.E.. He informed Mr. McNeill that he had just used drugs with Plaintiff and told him of the drug activities then occurring in Mr. Torian's house. Mr. Sherba agreed to take part in a controlled buy and to wear a wire to record his conversations during the buy. He returned to 102 Ellis Street at approximately 8:00 a.m. with $280.00 of marked money provided by the police. While at the house, Sherba either bought or borrowed dilaudids from Plaintiff. Sherba left $100.00 or $200.00 on Plaintiff's bed as payment for the drugs.

After debriefing Sherba and collecting the dilaudids, the police drove by the residence. They noted the location and description of the house, but there was no address posted. Based on their extensive prior dealings with Torian, the police believed he lived at the house. Corporal Stanley Sweeney reviewed Plaintiff's criminal history records, which listed his address as 206 Ellis Street, and checked the Beckley city directory which listed a person with the name Torian at 206 Ellis Street. As Defendants observe, Torian's driver's license also identified his address as 206 Ellis Street. From all this information, the officers concluded that the house where the controlled buy had taken place was Plaintiff's house and that the address was 206 Ellis Street. As it turned out, however, the real address of the "drug" house was 102, rather than 206 Ellis Street. Gloria Fowlkes and not Plaintiff lived at the

102 Ellis Street house, although Torian was frequently a visitor and a regular overnight guest there.

Corporal Sweeney applied for a search warrant based on the controlled drug buy. The affidavit submitted in support of the search warrant application was inaccurate in only one detail: it identified the address of the "drug house" as 206 rather than 102 Ellis Street. A Raleigh County Magistrate issued a search warrant that accurately described the color, size, and construction of the house to be searched at 102 Ellis Street. The warrant also provided accurate directions to the house. Again, the only error the warrant contained was the 206 Ellis Street address designation.

In the early afternoon of October 3, 1995, the police entered 102 Ellis Street, and presented the search warrant to Plaintiff and Gloria Fowlkes. The police thus searched the house they intended to search.

Plaintiff was patted down and handcuffed and the police recovered crack cocaine, dilaudids, and heroin as well as drug paraphernalia, baggies, a digital scale and $897.00. Torian agrees that Officer Sweeney simply patted him down, that no excess force was used and that he suffered no physical injuries as a result of the search. Defs.' Mem. Supp. Summ. J. Ex. A at 119, 120 and 143. Although Plaintiff asserts his money, diamond ring, and gold chain were missing from the back bedroom, he submitted no evidence that the police took them. In fact, he admits he does not know who took the money. Defs.' Mem. Supp. Summ. J. Ex. A at 131.

## DISCUSSION

As a preliminary matter, there is absolutely no evidence of the use of excessive force by the police. All evidence, including Plaintiff's deposition testimony, is to the contrary. Defendants submitted Plaintiff's deposition testimony, which clearly concedes the police did not use excessive force against him. Plaintiff's response to Defendants' summary judgment motion neither presents contrary evidence nor addresses the legal issues relevant to federal causes of action based on excessive force and false imprisonment. Ac-

cordingly, the Court **GRANTS** summary judgment for Defendants on those claims.

■ As to the invalid search warrant claim, the Fourth Amendment is not violated "by the mistaken execution of a valid search warrant on the wrong premises." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Comparatively, the issue here involves the correct execution of a warrant on a residence correctly described except for the street number.

■ Because Officer Sweeney has asserted the qualified immunity defense, the Court need not resolve the question of whether there was an actual violation of the Fourth Amendment. Our Court of Appeals has explained why this is so:

> Because qualified immunity is designed to shield officials not only from ultimate liability but also from the hardships of litigation itself, the immunity shield is necessarily more protective than is the defense on the merits. This broader protection is reflected in [the] test of "objective reasonableness" for entitlement to qualified immunity ... [under which] a plaintiff may prove that an official has violated his rights, but an official is nonetheless entitled to qualified immunity if a reasonable person in the official's position could have failed to appreciate that his conduct would have violated those rights.

*Torchinsky v. Siwinski,* 942 F.2d 257, 260 (4th Cir.1991) (citations and internal quotation marks omitted).

In the instant action, a reasonable officer could have concluded there was probable cause to apply for the warrant and to execute the warrant at 102 Ellis Street. The police received information from Walter Sherba that he had just previously participated in drug activities there. Mr. Sherba then participated in a recorded controlled buy at the house. The police had had extensive prior dealings with Plaintiff and they knew that he often stayed overnight at the 102 Ellis Street house. Mr. Sherba was debriefed by the police and the drugs obtained by Sherba in the controlled buy were collected by the police. This evidence was presented to the

Magistrate, who then found that probable cause existed to issue the search warrant.

In *Maryland v. Garrison,* 480 U.S. 79, 87, 107 S.Ct. 1013, 1018, 94 L.Ed.2d 72 (1987), the Court observed it had "recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult task of making arrests and executing search warrants." Following *Garrison,* our Court of Appeals concluded the "particularity requirement," which specifies that search warrants will not issue unless they particularly describe the place to be searched, prohibits general exploratory searches. *U.S. v. Owens,* 848 F.2d 462, 463 (4th Cir.1988).

> A warrant meets the particularity requirement if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended. An erroneous description in the warrant, however, does not necessarily invalidate a warrant and subsequent search.

*Id.* (citations and internal quotation marks omitted).

Recently, in *U.S. v. Henry,* 931 F.Supp. 452 (S.D.W.Va.1996)(Goodwin, J.), police officers observed a confidential informant make a controlled buy of cocaine on the porch of a residence whose precise street address could not be seen because of darkness. The officers submitted an affidavit for a search warrant listing 1701 Tenth Avenue as the residence to be searched. After issuance of the warrant, the officers entered the apartment at 1703 Tenth Avenue and confiscated drugs and money. The defendant then filed a motion to suppress arguing that because the wrong address was listed on the warrant, the fruits of the search should be suppressed. Judge Goodwin denied the motion to suppress and concluded the police officers seeking and executing the warrant knew the correct location of the residence. Judge Goodwin observed:

> the remainder of the description in the search warrant made it very unlikely, in spite of the address error, that officers would mistakenly search the wrong residence. Moreover, the fact that the police officer seeking and executing the search warrant knew the correct location of the premises to be searched made a mistake still more unlikely.

*Id.* at 454 (citations omitted).

In the strikingly similar situation here, Officer Sweeney and the other officers set up a controlled buy between Torian and Mr. Sherba. After monitoring the recording of the drug transaction, the officers drove by the residence where the drug deal occurred. Sweeney checked Plaintiff's criminal history and the Beckley city directory. The police then obtained a search warrant that describes the residence to be searched as:

> a one story wood frame dwelling, two toned gray with awnings over the windows and located at 206 Ellis Street. Directions: third road on the right off New River Dr., second residence on right. 206 Ellis Street is known as the residence of Harry Lee Torian.

Other than the address, the description of the residence is correct and precise.

Officer Sweeney reasonably could have concluded the warrant met the particularity requirement because he could, based on the warrant, identify the place intended by the warrant. As in *Henry, supra,* the description on the warrant at issue here made it very unlikely that the police would mistakenly search the wrong residence. Because the officers seeking and executing the warrant knew the correct location of the house to be searched, the possibility that they would make a mistaken entry was extremely small.

■ Defendant Sweeney clearly is entitled to qualified immunity from liability in regard to the federal constitutional claim. Law enforcement officers are immune from § 1983 liability arising from official discretionary acts that do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Our Court of Appeals has recently formulated a three step analysis for determining whether an officer's conduct is immunized. The Court must:

> (1) identify the right allegedly violated, (2) decide whether that right was clearly es-

tablished at the time of the alleged violation, and, if so, (3) determine whether a reasonable person in the officer's position would have known that his or her actions violated that right.

*Smith v. Reddy,* 101 F.3d 351, 355 (4th Cir. 1996).

Here, it was clearly established at the time of the alleged violation that searching a residence without probable cause constituted a violation of the Fourth Amendment. The question to be determined, therefore, is whether a reasonable person in Sweeney's position would have thought his actions violated the Fourth Amendment. The *Reddy* Court observed:

> When an officer acts pursuant to a warrant, the pertinent question is whether the officer could have reasonably thought there was probable cause to seek the warrant. Qualified immunity is lost only if the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. In other words, an officer is not denied qualified immunity for making a reasonable mistake, as long as that mistake is reasonable under the circumstances.

*Id.* at 356. Here, Officer Sweeney reasonably could have thought there was probable cause to seek the warrant. Submitting the wrong address in the application for the warrant is a mistake that was reasonable under the circumstances. Qualified immunity also extends to Officer Sweeney for the execution of the warrant; there is no evidence suggesting he did not reasonably believe he was at 102 Ellis Street when executing the warrant.

The Court's determination that Officer Sweeney acted reasonably is supported by the fact that he first sought and obtained a search warrant from the magistrate. *See Torchinsky v. Siwinski,* 942 F.2d 257, 261–62 (4th Cir.1991). When a police officer protects a homeowner's rights by obtaining a warrant from a neutral magistrate, the officer is entitled to a certain amount of protection from § 1983 actions. *Id.* at 262. Without such protection, "the threat of liability would force officers to continuously second-guess the considered decisions of magistrates." *Id.*

For the above reasons, the Court **GRANTS** Defendants' motion for summary judgment on all federal causes of action asserted against Officer Sweeney.

Municipal governments may be liable under federal law only for their own illegal or unconstitutional policies; they are not liable for the acts or omissions of their employees:

> [T]he language of § 1983 ... compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we hold that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). It is rather "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38.

After *Monell,* there are at least five avenues available to establish official policy and to impose § 1983 liability on a municipal body: 1) actions by municipal legislative bodies are official policy; *see, e.g., Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); 2) actions by municipal agencies or boards exercising authority delegated by the municipal legislative body may be official policy; *see, e.g., Monell, supra;* 3) actions by those with final decision-making authority in the municipality are official policy; *see, e.g., Pembaur, supra;* 4) official policy may be proven by demonstrating a policy of inadequate training or supervision; *see e.g., City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); and, 5) finally, official policy may be shown by proving the existence of a custom by a municipality or political subdivision. *See, e.g., Pembaur, supra.* None of those

avenues is addressed in Plaintiff's response to the motion for summary judgment.

 The Supreme Court recently held:

it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.

*Board of County Commissioners v. Brown,* —— U.S. ——, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Although the Complaint alleges the City of Beckley had a policy and custom of failure to train its officers, Plaintiff's response to Defendant's motion for summary judgment attempts neither to identify specific conduct attributable to the City nor to demonstrate the City was the moving force behind the alleged injury. Plaintiff has presented no evidence indicating either a policy of inadequate training or supervision or showing an official custom of condoning unconstitutional acts. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's federal claims against the City of Beckley.

All claims over which the Court has original jurisdiction have been dismissed. After considering the factors discussed in *Shanaghan v. Cahill,* 58 F.3d 106 (4th Cir.), the Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the putative State claims. Accordingly, the Court **REMANDS** all State claims to the Circuit Court of Raleigh County, West Virginia. The Clerk is **DIRECTED** to remove this action from the docket.