**Randall L. McDERMENT, et al., Plaintiffs,**

v.

**Delmar BROWNING, et al., Defendants.**

**No. CIV.A. 2:97–0484.**

United States District Court, S.D. West Virginia, Charleston Division.

Sept. 21, 1998.

---

Jennifer N. Taylor, Campbell & Turkaly, Charleston, WV, for Plaintiffs.

Travis S. Haley, Timothy A. McNeeley, Pullin, Knopf, Fowler & Flanagan, Charleston, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion for summary judgment. The Court GRANTS in part and DENIES in part Defendants' motion.

### I. FACTUAL BACKGROUND

At the outset, the Court notes the expansive gulf separating the parties' respective accounts of what occurred on the night in question. Defendants paint Plaintiff Randall L. McDerment as an unruly, intoxicated and lawless suspect with a history of violent behavior who attempted to evade them and then resisted mightily his capture. McDerment and others suggest he was minding his business, traveling on his own property and intending simply to tell his grandmother of a death in the family, when he was unexpectedly knocked from his ATV and violently attacked by police with excessive physical force and pepper spray. Recognizing the divergence of the parties' accounts, the Court is commanded by *Rule 56, Federal Rules of Civil Procedure,* to credit McDerment's version of events.

McDerment is a 36 year old illiterate and disabled individual who suffers from hearing loss and other physical and mental impairments. Psychiatric testing was performed on McDerment in 1997. The examining psychiatrist, Dr. Sidney C. Lerfald, opined as follows:

The assessment is that of Mental Retardation with a history of also the possibility of a learning disability. There is also a possible history of alcohol abuse. He has bilateral decreased hearing.

It is clear that he is not competent to exercise judgment over his own monies or medical decisions. He is certainly in need of a committee to be appointed for him since this is a non-reversible condition.

Ex. 4, Pl.'s motion for summ. jgt. McDerment also has a speech impediment which appears to be related to his hearing loss.

McDerment has never held a job, receives Social Security Disability Benefits and lives with his parents. At approximately midnight on May 12, 1995, McDerment left his residence and got on his four wheel all-terrain vehicle (ATV). He intended to go to his grandmother's house to inform her of a death in the family. Her house is close enough to his own such that he could "throw a rock and hit her house from where" he lives. Dep. of Randall L. McDerment at 17. McDerment never got on the main road, traveling the entire distance on his father's property.

Sometime during the evening, and prior to leaving home, McDerment drank two large cans of beer. McDerment asserts that while traveling across the bottom of his father's property on the ATV, two police cars came onto the bottom and a third one stayed alongside the main road near the property. McDerment heard no sirens and saw no flashing lights. The police officers left their vehicles and began pursuing McDerment on foot. He asserts they never asked him to stop. When asked why he did not stop when he saw the officers, McDerment responded as follows:

Well, I didn't have no reason to stop for. I wasn't doing nothing, it was an open field on private property and I wasn't doing nothing so why should I stop for? I had no reason to stop, so I just kept on going. I told them to kiss my ass, that I was on my own property. That's what I said, "Hell, leave me alone."

*Id.* at 21.

One officer, hidden behind a bush, and another officer apparently caught up with McDerment. He was sprayed in the eyes with Capstun, a burning pepper spray. Through the use of the pepper spray and physical force, McDerment was knocked from the ATV. McDerment asserts the pepper spray left him temporarily without vision. Prior to knocking him off the ATV, the deputies taunted McDerment by saying "Come here, big boy" and "Come here you old chicken shit." Trans. of Magis. Ct. Trial at 132.

While he was struggling to regain his sight and flailing his arms, the officers told him to get on his knees. While difficult to discern,

at some point after this, McDerment was sprayed again with the Capstun. McDerment told the deputies he was unable to get to his knees, given pins placed in his knees from a previous accident. The officers then kicked McDerment's legs out from under him, mounted his back and pulled his arms up behind him. McDerment claims at least three and perhaps four officers were involved in his arrest.

At approximately this time, McDerment's cousin came to investigate the situation and McDerment asserts his cousin was told by a female officer, presumably Defendant Sergeant Phyllis Cook, with gun drawn, to "get his ass back down ... where he came from." *Id.* at 27. McDerment asked why he was being arrested but the deputies did not respond.

Prior to the chase, one of the deputies, Defendant David W. Sutphin, told a fellow deputy, Defendant Delmar Browning, that he was familiar with McDerment. Deputy Sutphin and another deputy had picked McDerment up on a mental hygiene petition on an earlier occasion. Deputy Sutphin apparently knew of McDerment's impairments and the location of his residence.

The officers handcuffed McDerment and took him to a 911 detachment in Madison, on the opposite end of the county. He was administered a Breathalyzer test at approximately 1:00 a.m. The deputies then fueled the vehicle, stopped again at the 911 detachment and proceeded to the South Central Regional Jail in Charleston. When they arrived at the jail, the doctor on duty stated McDerment was "in bad shape" and could not be processed. *Id.* at 31. The deputies then proceeded back toward Boone County with McDerment.

On this return trip, they stopped at a tavern and left McDerment in the car while they investigated another complaint. After that, they proceeded to Boone Memorial Hospital in Madison. McDerment complained to the officers that his eyes were burning and that his arm was hurting. He asked for a rag and water. The officers refused, telling him the pain would go away. At the hospital, McDerment was examined, found to have some swelling in his arm, and

his arm was put in a sling. X-ray reports were negative. Nothing unusual was noted when McDerment's eyes were examined.

The deputies and McDerment then traveled back to the South Central Regional Jail and arrived at 5:00 a.m. McDerment was released from the jail following his arraignment approximately three hours later. Several hours after his release, McDerment's father took him to a medical center in Charleston. It was noted that McDerment had a bruised arm and leg and some difficulty with his eyes. McDerment also visited the doctor since that time for continued complaints about his arm, leg and eyes. He claims that his arm still gets numb and aches at times. He also complains of having to put water in his eyes in the morning some times to get them opened and suffers from headaches. He still, however, rides his ATV, hunts, fishes and works on cars in his spare time.

McDerment was charged with DUI, resisting arrest and other offenses arising out of the incident. He was acquitted of all charges and filed this action.

McDerment's three Count complaint alleges (1) Deputy Browning, Deputy Sutphin and Sergeant Cook used excessive force against him and were deliberately indifferent to his serious medical needs; (2) supervisory liability against Sheriff Jennings P. Miller and the Boone County Commission; and (3) supplemental claims against Defendants for (a) assault and battery, (b) intentional infliction of emotional distress, (c) invasion of privacy, (d) negligence and (e) gross negligence. Defendants seek dismissal under a variety of legal theories.

## II. DISCUSSION

### A. *The Summary Judgment Standard*

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]" *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.*, 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn*, 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995).

## B. Excessive Force and Qualified Immunity

█ The parties rightly agree McDerment's excessive force claim is properly analyzed under the Fourth Amendment. As recently as a few days ago, our Court of Appeals observed " '[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard.' " *Vathekan v. Prince George's County*, 154 F.3d 173, 177 (4th Cir.1998)(quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

*Vathekan* is one of the Court of Appeals' most recent statements concerning qualified immunity in the context of an alleged Fourth Amendment violation. The Court thus tracks *Vathekan*'s observations on existing law.

█ In considering a claim of qualified immunity, the first task is to identify the specific right allegedly violated. The Court makes this determination with an awareness of *Jean v. Collins*, 155 F.3d 701, 707 (4th Cir.1998), and its admonition "a court must identify the right infringed at a high level of particularity."

Here, McDerment's claim is based on his Fourth Amendment right to be free from excessive force in the course of a Fourth Amendment seizure (1) brought about by officers who used substantial physical force and pepper spray against him knowing he was mentally and physically handicapped; and (2) knowing he was on his family's property at all times both prior to and during the seizure.

█ Next, the Court must determine whether the right was clearly established at the time of the incident. The inquiry is whether the established contours of the right were sufficiently clear at the time so as to plainly demonstrate to reasonable officers their actions violated McDerment's rights. There need not be a prior case holding identical conduct to be unlawful. The absence of such a case may even, in some cases, buttress the assertion that a government official's actions transgressed clearly established law. *See Better Government Bureau, Inc. v. McGraw*, 904 F.Supp. 540, 552 n. 16 (S.D.W.Va.1995)(" 'the absence of [many] re-

ported case[s] with similar facts demonstrates nothing more than widespread compliance with well-recognized constitutional principles.'") (quoting *Eberhardt v. O'Malley*, 17 F.3d 1023, 1028 (7th Cir.1994)(Posner, J.)). Rather, the unlawfulness of the conduct must simply be manifest under existing authority.

In judging entitlement to qualified immunity, the Court of Appeals in *Vathekan* stated as follows:

[T]he question is "whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." "The immunity test and the test on the merits both rely on an objective appraisal of the reasonableness of the force employed." The objective reasonableness of force should be assessed "in full context, with an eye toward the proportionality of the force in light of all the circumstances."

*Vathekan*, at 179 (citations omitted).

■ Taking the facts, as it must, in the light most favorable to McDerment, the Court need not labor with a lengthy discussion of the case law. Plaintiff's version of the events is that (1) he was known by law enforcement officials to be mentally and physically handicapped; (2) he traveled by ATV exclusively on his family's property for about a stone's throw to his grandmother's house; (3) he was accosted by law enforcement officials without probable cause on private property; (4) he was knocked from his ATV with both physical force and pepper spray; (5) he was sprayed again while flailing his arms and trying to regain his sight; (6) he was kicked to his knees despite telling officers he could not get to his knees because of prior injuries; and (7) he was mounted by two officers and each pulled an arm behind his back and handcuffed him. On these facts, there is positively no basis for a finding of probable cause that McDerment posed a serious threat of harm to himself or others. McDerment was not committing a crime and was not significantly resisting arrest.

Looking to the proportionality of the force used in light of all the circumstances, and again taking McDerment's version of events as true, the objective unreasonableness, and indeed the unlawfulness and excess, of the officers' conduct should have been apparent to a reasonable law enforcement official under the law existing at the time.

The Court again stresses, however, there is a major divergence of opinion concerning what happened on the night in question. Final resolution of the question of qualified immunity thus depends on a factual determination of what actually happened. Consequently, "'the issue is inappropriate for resolution by summary judgment.'" *Id.* at 179 (quoting *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir.1992)). As stated in *Vathekan*, "'summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants.'" *Id.*

Accordingly, the Court **DENIES** the motion for summary judgment on the issue of qualified immunity filed by Deputy Browning, Deputy Sutphin and Sergeant Cook.

## C. Deliberate Indifference to Serious Medical Needs

■ Although McDerment was not a pretrial detainee at times relevant to his inadequate medical treatment claim, he agrees with Defendants his claim is properly analyzed under the rubric announced in *Browning v. Snead*, 886 F.Supp. 547 (S.D.W.Va. 1995). While the analytical propriety of settling the issue on this basis is questionable, the Court will decide the question as briefed. *Cf. Mertens v. Hewitt Associates*, 508 U.S. 248, 254–55, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)("Thus, although we acknowledge the oddity of resolving a dispute over remedies where it is unclear that a remediable wrong has been alleged, we decide this case on the narrow battlefield the parties have chosen, and reserve decision of that antecedent question."). In *Browning*, the Court stated as follows:

In this Circuit moreover, to prove a claim of failure to provide medical care under § 1983, a pretrial detainee is required to prove the officials involved exhibited a deliberate indifference to the detainee's serious medical needs. For an act or omission to rise to the level of deliberate indiffer-

ence, it "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness [and] may be demonstrated by either actual intent or reckless disregard." Moreover, "[a] defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."

*Id.* at 555 (quoted authority and citations omitted).

Assuming McDerment has demonstrated the requisite seriousness of his medical condition at the time, a hefty assumption indeed, he has failed utterly to demonstrate the deputies' acts or omissions were "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.*

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the inadequate medical treatment claim.

### D. Supervisory Liability of Defendant Sheriff Jennings P. Miller

 It is well established supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.

McDerment asserts Sheriff Miller is liable in his supervisory capacity because Miller (1) had no clear cut policy for deputies to complete "Use of Force" forms contemporaneous with an incident; (2) deputies are never questioned about the forms they have executed; and (3) there is widespread use of pepper spray by department officers. Like Defendants, McDerment argues the appropriate standard for determining supervisory liability is to be found in *Shaw v. Stroud,* 13 F.3d 791 (4th Cir.1994). Pursuant to *Shaw,* supervisory liability may be established by proving three elements:

We have set forth three elements necessary to establish supervisory liability under § 1983:(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk"

of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* at 799 (citations and quoted authority omitted).

McDerment's conclusory, one-page argument supporting Sheriff Miller's liability is wholly inadequate under *Shaw*'s demanding standard. Foremost, there is little more than a scintilla of an inference Miller "had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like" McDerment. *Id.*

Sheriff Miller is entitled to judgment as a matter of law on the supervisory liability cause of action. Accordingly, the Court GRANTS Defendants' motion for summary judgment on this claim.

### E. Liability of The Boone County Commission

 The Supreme Court restated recently its well-settled position on municipal liability in *Board of Cty. Com'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997):

[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor....

Instead, ... we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury....

As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. *The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the munici-*

*pal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.*

*Id.* 117 S.Ct. at 1398–88 (emphasis added); *Robertson v. City of Beckley,* 963 F.Supp. 570, 576 n. 5 (S.D.W.Va.1997); *Torian v. City of Beckley,* 963 F.Supp. 565, 570 (S.D.W.Va. 1997).

In support of its claim against the Boone County Commission, McDerment asserts (1) the Commission had a policy and custom of encouraging the use of force against citizens to "subdu[e] suspects[,]" pl.'s mem. in resp. at 12; (2) it kept no records concerning the use of force; (3) it did not track the amount of pepper spray issued to deputies; and (4) individuals were sprayed by deputies frequently. McDerment asserts "The lack of any accountability, the widespread use and tacit approval of [pepper spray] use as an easy method of subduing citizens can all be said to be the motivating force behind the violation" of his rights. *Id.* The Court disagrees.

Once again, McDerment's brief and conclusory remarks do little to pin derivative liability on a Defendant that did not directly participate in the incident. McDerment has fallen well short of demonstrating the Commission "was the 'moving force' behind the injury alleged." *Id.* 117 S.Ct. at 1385. Accordingly, the Commission is entitled to summary judgment, and the Court **GRANTS** Defendants' motion as to the Commission.

### F. State Law Claims

Given the Court's discussion under Section II.B *supra,* summary judgment for Deputy Browning, Deputy Sutphin and Sergeant Cook on the supplemental claims is inappropriate.[1] Nonetheless, it appears McDerment's theory of liability against Sheriff Miller and the County Commission on the supplemental claims was based upon

McDerment's view that the two Defendants "have already been shown to have encouraged a custom, policy and practice of the use of excessive force in violation of plaintiff's Fourth Amendment rights." Pl.'s resp. mem. at 14. As noted above, the record does not support that assertion as to either Sheriff Miller or the Commission. Accordingly, the Court deems the supplemental state claims as to Sheriff Miller and the County Commission abandoned.

Accordingly, the Court **GRANTS** Sheriff Miller and the County Commission's motion for summary judgment on the state claims and **DENIES** the same with respect to the deputies and Sergeant Cook.

### III. CONCLUSION

Based on the foregoing, the Court (1) **DENIES** Defendants Browning's, Sutphin's and Cook's motion for summary judgment on the issue of qualified immunity; (2) **GRANTS** Defendants' motion for summary judgment on the inadequate medical treatment claim; (3) **GRANTS** Defendant Miller's and the County Commission's motion for summary judgment on the supervisory liability claim; (4) **GRANTS** Defendant Miller's and the County Commission's motion for summary judgment on the state claims; and (5) **DENIES** the same motion with respect to the Deputy Browning, Deputy Sutphin and Sergeant Cook.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

---

1. McDerment does not challenge Defendants' assertion that his invasion of privacy claim is governed by a one year statute of limitations. That assertion is consistent with West Virginia law. *See* syl. pt. 1, *Slack v. Kanawha Cty. Housing and Redevel. Auth.,* 188 W.Va. 144, 145, 423 S.E.2d 547, 548 (1992) ("Invasion of privacy is a personal action that does not survive the death of the individual at common law or under W. Va. Code, 55–7–8a(a) (1959)). Consequently, a claim for invasion of privacy is governed by the one-year statute of limitations provided by W. Va. Code, 55–2–12(c) (1959)."