601 S.E.2d 69

**Kevin NEISWONGER and Taunia Neiswonger, Plaintiffs Below, Appellants,**

v.

**Officer B.K. HENNESSEY, Individually and as a Member of the Morgantown City Police Department, and Morgantown City Police Department, Defendants Below, Appellees.**

No. 31274.

Supreme Court of Appeals of West Virginia.

Submitted May 25, 2004.

Decided June 24, 2004.

Concurring Opinion of Justice Starcher July 14, 2004.

---

1. On this Court, only the dissent's author and I have served as trial judges.

Starcher, J., filed concurring opinion.

---

David A. Jividen, Esq., Tiffany E. Davis, Esq., W. Howard Klatt, Esq., Jividen Law Offices, PLLC, Wheeling, West Virginia, Attorneys for Appellants.

Amy M. Smith, Esq., Michael Kozakewich, Jr., Esq., Steptoe & Johnson, PLLC, Clarksburg, West Virginia, Attorneys for Appellees.

PER CURIAM:

This is an appeal by Kevin Neiswonger and Taunia Neiswonger, his wife, from an order of the Circuit Court of Monongalia County granting the defendants below, Officer B.K. Hennessey and the Morgantown City Police Department, summary judgment in a tort action instituted by the appellants. On appeal, the appellants claim that the circuit court erred in granting summary judgment in this case.

## I.

## FACTS

On November 8, 1998, the appellant Kevin Neiswonger and a friend, Andrew French, were staying at the house of Jim Ayersman, located in Morgantown, West Virginia. Between 1:30 a.m. and 2:00 a.m., while Mr. Ayersman was absent from the house, Mr. Neiswonger and/or Mr. French triggered a burglar alarm which they could not turn off or reset.

Because the burglar alarm was quite loud, Mr. Neiswonger decided to leave the Ayersman house and spend the remainder of the night in another location. He gathered up his belongings and started walking toward his car which was nearby.

As appellant Neiswonger was placing his belongings in his car, Officer B.K. Hennessey, who had been dispatched to investigate the alarm, observed Mr. Neiswonger and stopped to question him. Mr. Neiswonger identified himself, and at that point, Officer Hennessey observed a spot of something on Mr. Neiswonger's t-shirt which appeared to be blood. Officer Hennessey inquired about the "blood," and before Mr. Neiswonger could respond, Officer Hennessey observed another officer, Patrolman Webber, who had accompanied Officer Hennessey, run past with a drawn pistol. Officer Webber shouted, "cuff him" or "restrain him." At that point, Officer Hennessey tackled Mr. Neiswonger and forced him to the ground. In so doing, Officer Hennessey broke Mr. Neiswonger's leg.

As the incident subsequently evolved, the police officers determined that there was no wrongdoing, and after Mr. Neiswonger was questioned in a police cruiser, he was released.

The appellants, Mr. Neiswonger and his wife, subsequently filed a lawsuit against Officer Hennessey and the Morgantown City Police Department in the Circuit Court of Monongalia County. It appears that the appellants claimed that Mr. Neiswonger had been the victim of assault, battery, intentional infliction of emotional distress, abuse of process, and negligent wanton and reckless misconduct on the part of Officer Hennessey. They also claimed that the Morgantown City Police Department had been negligent in hiring, training and supervising Officer Hennessey. Finally, they claimed that Mr. neiswonger's federal civil rights had been violated in contravention of 42 U.S.C. § 1983.

Subsequent to the filing of the lawsuit, the case was removed to federal district court because of the § 1983 federal claim.

Following removal of the case to federal district court, Officer Hennessey and the Morgantown City Police Department moved for summary judgment. The federal district court took the motion under advisement, and after considering the documents filed, concluded that Officer Hennessey's actions were "objectively reasonable" and that under federal law, Officer Hennessey and the Morgantown City Police Department were entitled to summary judgment on the § 1983 federal claim. *Neiswonger v. Hennessey*, 89 F.Supp.2d 766 (N.D.W.Va.2000). The federal district court refused to exercise supplemental jurisdiction with regard to the State law claims and dismissed those claims without prejudice.

Subsequent to the ruling by the federal district court, Mr. Neiswonger and his wife, on May 26, 2000, filed a second action in the Circuit Court of Monongalia County in which they reiterated their state claims. After initial development of the action, Officer Hennessey and the Morgantown City Police Department moved for summary judgment.

On April 4, 2001, the circuit court granted summary judgment as to a number of the appellants' claims apparently on the ground that the appellants were collaterally estopped

by the federal decision from asserting their state claims, although the basis for the summary judgment was not totally clear. As a consequence, Officer Hennessey and the Morgantown City Police Department, to clarify the situation and to dispose of certain remaining claims in the case, moved that the court take judicial notice of the federal court's decision and, in effect, hold that the appellants were barred by the federal decision from asserting their claims under the doctrine of collateral estoppel. After considering the motion, the circuit court dismissed all the appellants' claims with prejudice.[1]

In the present appeal, the appellants claim that the circuit court erred in granting summary judgment.

## II.

## STANDARD OF REVIEW

█ In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated: "A circuit court's entry of summary judgment is reviewed *de novo*." In the same case, the Court reiterated the rule set forth in Syllabus Point 3 of *Aetna Casualty & Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), that: "A motion for summary judgment should be granted only

1. The circuit court's order, entered July 17, 2002, states, in relevant part:

    The first matter to be addressed was defendants' motion asking the court to take judicial notice of the United States District Court for the Northern District of West Virginia's decision in this matter of *Neiswonger v. Hennessey, et al.*, 89 F.Supp.2d 766 (N.D.W.V.2000). This motion was filed on January 22, 2002 by counsel for defendants. This Court had previously applied those findings of fact to the issues of this case. In an order entered on April 4, 2001 this Court dismissed many of plaintiffs' claims on the basis of *res judicata* and issue preclusion. This Court found that the claims dismissed were those that would require the jury to make factual determinations adverse to those of the federal court.

    Whereupon, plaintiffs' counsel represented to the Court that he had not been served with a copy of this Motion and he asked the Court for additional time to research the judicial notice issue. Plaintiffs' counsel argued that if judicial notice of the federal decision was taken and published to the jury, there would be no issue remaining for trial. After much discussion,

when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

## III.

## DISCUSSION

The appellants in the present case argue that the trial court erred in holding that they were precluded, under the doctrine of collateral estoppel, from asserting their claims because of the prior ruling of the federal district court in *Neiswonger v. Hennessey, supra.*

█ In *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court examined the doctrine of collateral estoppel and in Syllabus Point 1 concluded that:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is

the Court determined that plaintiffs' position was that the April 4, 2001 order foreclosed all causes of action as to the plaintiff and that no issue remained to be tried. The Court noted generally that the order contained language which indicated that a viable claim remained, even after application of the previously found facts, as to the negligence of Officer Hennessey and the *respondeat superior* claim against the City.

In light of the arguments of plaintiffs' counsel that no question of fact remained, the entire record and upon mature deliberation, the Court re-evaluated its previous decision represented by the April 4, 2001 order and decided the recklessness and negligence claims, previously believed to require a factual decision, were also foreclosed. The Court, on reconsideration, extended its grant of summary judgment in favor of the defendants to all the plaintiffs' claims.

Therefore, it is ORDERED and ADJUDGED, that the defendants, Officer Bryon Hennessey and the City of Morgantown, shall have summary judgment on all claims in this matter and that the entire action be dismissed, with prejudice.

raised had a full and fair opportunity to litigate the issue in the prior action.

■ In analyzing the first of these elements in the *Miller* case, the Court concluded that:

In our view, for purposes of issue preclusion, issues and procedures are not identical or similar if the second action involves application of a different legal standard or substantially different procedural rules, even though the factual settings of both suits may be the same.

*State v. Miller, id.* at 10, 459 S.E.2d at 121.

■ In the present case, the third of the four elements for the application of the doctrine of collateral estoppel set forth in Syllabus Point 1 of *State v. Miller, id.* plainly were present. The party, or parties, against whom the doctrine was invoked was, or were, a party, or parties, who was, or were, a party or parties to the prior action. Further, it appears that the appellants had a full and fair opportunity to litigate the issues, at least, as viewed by the federal court, in the prior action. Thus, two of the four requirements for the application of collateral estoppel as set forth in Syllabus Point 1 of *State v. Miller, id.,* were met. However, the Court has difficulty with one of the additional requirements for the application of collateral estoppel. That is the requirement that the issues decided in the first case be identical to the issues in the subsequent case. As plainly indicated in *State v. Miller, id.,* the Court does not view issues to be identical if the resolution of the issues involves the application of different legal standards in the two cases.

In the present case, the appellants claim that Officer Hennessey and the Morgantown City Police Department committed torts as those torts are defined by West Virginia law, and as they are legally cognizable by West Virginia's courts. Whether the torts have been committed depends upon the intent of the alleged tortfeasor, his recklessness, and whether he followed the prescribed standard of care. Whether the torts have been committed, thus, depends potentially upon the character of the alleged tortfeasor's conduct and upon his state of mind.[2] In the federal action involved in the present case, the federal court looked at the character of the alleged tortfeasors' actions to determine only whether they were objectively reasonable under the Fourth Amendment guarantee that an individual be free from unreasonable searches and seizures. *See Neiswonger v. Hennessey, supra* [89 F.Supp.2d] at 772. The federal court did not consider whether the alleged tortfeasors' conduct constituted torts as defined by West Virginia law.[3]

In this Court's view, the resolution of the issues involved in the federal action required the application of legal standards different from those which will be required to resolve the issues in the present case. Under the holding in *State v. Miller, supra,* this fact indicates that issues previously decided are not those to be decided in the present action, and that collateral estoppel or issue preclusion does not apply.

Additionally, Syllabus Point 1 of *State v. Miller, supra,* requires that there be a final adjudication on the merits of the prior action. While there was a final adjudication of the federal § 1983 issue in the federal action in issue in the present case, the federal district court explicitly declined to rule on the merits of the appellants' state claims, and, in fact, dismissed them without prejudice.

After analyzing the entire situation, the Court believes that there was no appropriate

---

**2.** For instance, in *Funeral Services by Gregory, Inc. v. Bluefield Community Hospital,* 186 W.Va. 424, 413 S.E.2d 79 (1991), the Court recognized that to be liable for a battery, an actor must act with intention of causing harmful or offensive contact with a person. In *Cook v. Heck's, Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986), the Court indicated that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress is subject to liability for emotional distress.

**3.** With regard to the potential liability of the Morgantown City Police Department, the appellants' claim was that the police department had been negligent in the hiring, training and supervision of Officer Hennessey. Because the federal court addressed only the question of whether Officer Hennessey's conduct was objectively reasonable, it did not address the question of whether the police department's hiring, training and supervising of him were conducted in accordance with the appropriate standard of care.

basis for the circuit court to have concluded that the appellants' action was barred by collateral estoppel or issue preclusion.

Additionally, the Court notes that summary judgment is a harsh remedy which, in effect, limits the development of the issues in a case, and as stated in Syllabus Point 3 of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York, supra,* it should be granted only when there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law. In the present case, the Court believes that further development of the evidence on the character of Officer Hennessey's conduct and his state of mind at the time of the incident in issue is appropriate to clarify the application of the law. Likewise, further development of the evidence relating to the Morgantown City Police Department's hiring, training, and supervising Officer Hennessey is appropriate.

For the reasons stated, the judgment of the Circuit Court of Monongalia County is reversed, and this case is remanded for further development.

Reversed and remanded.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

STARCHER, J., concurring:

(Filed July 14, 2004)

Sometimes police officers unintentionally injure entirely innocent people. Of course, we want to encourage and enable police officers to use the utmost care and caution in any use of force, but even so, incidents resulting in injury can occur.

I fully concur in the reasoning of the majority opinion. I write separately to briefly suggest a somewhat different approach to the legal issues in the instant case. Imposing legal liability can encourage public officials to demand training for law enforcement, to reduce the risk of negligence, injury, and liability. In the future, litigants and this Court might consider looking in this direction.

Some aspects of law enforcement work are inherently dangerous to police officers and to third parties and their property. The instant case is a prime example.

Police officers sometimes necessarily make "snap judgments" about the dangerousness of a situation, about whether to use force—even deadly force—to respond to actual or perceived threats and criminal conduct. Not even the best-trained police officer, using the best judgment possible, will choose "correctly" one hundred percent of the time.

The possibility of serious injury to innocent people is an inherent part of police work.

And the consequences of such force can be severe. In the instant case, the plaintiff suffered a broken leg. He could just as easily have suffered a brain injury if he had fallen another way.

Sometimes an injury to an innocent third party or their property will be the result of normal law enforcement action. Other times, such injury may result from negligent conduct by law enforcement, but conduct that is still not demonstrably outside the "standard of care."

Does this situation sound familiar? Of course it does—it is quite similar to the case of the explosives operator—the classic person engaged in an *abnormally dangerous or ultra-hazardous activity.* (It is also somewhat like the maker of an unreasonably dangerous product.)

It seems logical to me that we should apply to injuries for innocent victims of police conduct the same principles of strict liability that we apply to the innocent victims of people who set off dynamite.

Applying strict liability to innocent victims would keep police officers out of wasteful trials that second-guess their snap judgments. Non-innocent plaintiffs would still have to prove negligence by law enforcement.

For an interesting theoretical discussion of tort law and strict liability, *see* Geistfeld, Mark, "Should Enterprise Liability Replace the Rule of Strict Liability for Abnormally Dangerous Activities?", 45 U.C.L.A. L.Rev. 611 (1998).

No one has suggested that the plaintiff in the instant case was anything other than an

innocent bystander. Under our current law, he probably deserves to be compensated for his injuries, and it seems close to certain that he has the right to ask a jury from his community (who are, after all, the people who employ the police officer) to make that judgment. *See Bowers v. Wurzburg,* 207 W.Va. 28, 528 S.E.2d 475 (1999); *Foster v. City of Keyser,* 202 W.Va. 1, 501 S.E.2d 165 (1997); *King v. Lens Creek Ltd. Partnership,* 199 W.Va. 136, 483 S.E.2d 265 (1996).

Accordingly, I concur.